**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | Case Number: 25-MJ-69 (MAU) |
| : | |
| **LINWOOD BARNHILL,** : | |
| : | |
| : | |
| **Defendant.** : | |

**GOVERNMENT'S MEMORANDUM**
**IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this Memorandum in support of its Motion for Pretrial Detention of Defendant Linwood Barnhill under 18 U.S.C. §§ 3142(f)(1)(A) and (f)(1)(B). The defendant has been charged by Criminal Complaint in the United States District Court for the District of Columbia with violations of 18 U.S.C. § 1591(a)(1), (b)(1) (Sex Trafficking by Force, Fraud, or Coercion); 18 U.S.C. § 1591(a)(1), (b)(2) (Sex Trafficking of Children); 18 U.S.C. § 2422(b) (Coercion and Enticement); 18 U.S.C. § 2423(a) (Transportation with Intent to Engage in Criminal Sexual Activity); and 18 U.S.C. § 1952(a)(3)(A) (Interstate Travel or Transportation in Aid of Racketeering Enterprises). Four of these offenses are crimes of violence involving a minor victim and, as a result, there is a presumption that weighs in favor of detention. Under the factors outlined in 18 U.S.C. § 3142(g), there is no condition or combination of conditions that will reasonably assure the safety of any person and the community if he is released. As a result, detention is appropriate.

## BACKGROUND

A.  **Offense Conduct**

On August 21, 2024, Children's National Medical Center (CNMC) called the D.C. Child and Family Services Agency and made a report of sex trafficking regarding Minor Victim 1, a 15-year-old girl ("MV1"). MV1 reported to CNMC staff that she had been running away from home, off and on, for the past year, often missing for months at a time. MV1 stated that she had been missing for the past two months and that she had worked for a "pimp" who made her have sex for money. MV1 did not provide any further details at that time.[1]

On August 22, 2024, a social worker interviewed MV1 at CNMC. MV1 reported to the social worker that she had worked in commercial sex for a man named "Nico" while she was a runaway. MV1 stated that she used to work as a stripper at a strip club called the Ebony Inn in Maryland (5367 Sheriff Rd, Fairmount Heights, Maryland). MV1 reported that during that time, she lied about her age in order to work there. However, her "pimp," a man named Nico, knew that she was a minor and forced her to perform lap dances and have sex with men. Nico initially only took a small percentage of her earnings, but gradually began taking more. MV1 denied that Nico was physically abusive towards her, but recounted that he was verbally abusive and would call her names. MV1 stated that Nico had fired her for fighting, and that she has not seen him in about three weeks.

In February of 2025, MV1 was forensically interviewed. MV1 reported that she met Nico when she was 14 years old through her friend's sister. MV1 had run away from home and wanted to make money, and the sister introduced her to Nico. Nico brought MV1 to his home in

---

[1] Based on MV1's status as a runaway, the D.C. Office of the Attorney General had opened a case in connection with MV1, which is a sealed matter. A warrant had been issued for MV1 in connection with that matter.

Washington, D.C. and made her audition for him in his basement. MV1 had to try on outfits and dance for Nico on a stripper pole in his basement. Nico gave MV1 alcohol and marijuana while she 'auditioned.'

Nico informed MV1 that he would take a portion of the money that she earned at the club. He also told her that in addition to stripping, she would have to work the 'VIP room' at the club and have sex with men for money.

MV1 stated that she told Nico her real age during their first conversation. Nico directed her to tell the employees at the club that she was 18 years old.

After the 'audition,' MV1 started working for Nico at the Ebony Inn. Nico would pick up MV1 in Washington, D.C., and drive her, along with the other girls who worked for him, to the Ebony Inn in Maryland, drop them off, and then pick them up after the club closed. He would make them count the money they earned in the car and take his cut before driving them back.

MV1 stated that Nico would beat her when she did not make enough money. On one occasion when Nico became angry with MV1, he beat her and raped her, and then kept her in his basement for multiple days. When Nico let MV1 out of the basement, he told her that she needed to go back to work and made her wear make-up to cover the bruises on her face from the beating. MV1 told Nico that she wanted to leave, but he told her that she was not leaving until she paid him $10,000. MV1 recounted that she worked every day until she saved the money and paid Nico, at which point she left and turned herself in on the sealed matter discussed *supra*.

MV1 reported that she observed a gun in Nico's home and a gun in the glove compartment of his vehicle.

MV1 recounted that shortly after New Years (2025), she and a friend ran away from the facility they were in. They ended up going to Nico's residence because MV1's friend wanted to

make money by dancing. Nico told MV1 that she needed to get his name tattooed on her body. He brought MV1 and her friend to a man's home, and the man tattooed Nico's name on her body while Nico waited outside in the car. MV1 and her friend snuck out of a back entrance and ran away. After that, MV1 turned herself in again on her sealed matter. Law enforcement observed the tattoo of 'Nico' on MV1's body.

MV1 stated that Nico lives by NoMa and drives a white SUV. She described him as in his 50s, over 6 feet tall, brown skin, bearded, and always wearing a hat. He did not have any tattoos that she knew of. MV1 stated that Nico had previously been locked up for being a "pimp."

In April 2025, MV1 clarified that she met Nico when she had just turned fifteen years old, which was in April 2024. She stated that she worked for him for about four months before leaving and turning herself in. MV1 also stated that Nico had been reaching out to her recently, trying to persuade her to come work for him again.

During the April meeting with law enforcement, MV1 was shown a single confirmation photograph of Mr. Barnhill and stated that the man in the photo was Nico.

On March 4, 2025, law enforcement interviewed a 15-year-old girl ("W1"). W1 reported that a pimp named "Nico" had attempted to recruit her to work for him in commercial sex but she refused. However, Nico had paid her to recruit girls for him. W1 would have the girls come to her house, and Nico would pick them up, take them to "the K,"[2] and put them on the corner to work in commercial sex. However, W1 stopped doing this because she did not want to do it anymore. W1 recounted that Nico called her "recently" to ask if she had any more friends for him, and she told him no.

---

[2] Meaning K St. NE, an area known for street prostitution.

W1 stated that Nico knew her age. She further stated that Nico knew that the three girls she "gave" him were fourteen and fifteen years old.

W1 reported that Nico travels to North Carolina, Florida, and Baltimore to pick up girls that he meets online and then brings them back to Washington, D.C. to work for him in commercial sex.[3] Nico takes half of the money these girls make. W1 said Nico asked her to go with him on these trips to get girls, but she refused. W1 stated that the females whom Nico was "pimping out" ranged in age from approximately 16 to 24 years old.

W1 recounted that Nico makes the females who work for him get his name tattooed on their bodies. He also has a book containing naked photos of females who have worked for him. W1 described the book as brown with a cross on the front and stain marks. W1 further stated that Nico almost kidnapped a minor. W1 recounted that she was on the phone with Nico when Nico made the girl go into his basement and locked her down there. W1 went to Nico's house and got the girl out of the basement and told Nico that he could come by her house later to get them. However, W1 did not let Nico come to her house.

W1 described Nico as big, with light skin, a long beard, curly hair, and freckles. W1 believed Nico had a tattoo of his mom's name on his arm. He lives in the Trinidad neighborhood of Washington, D.C., and drives a white truck that W1 thought was a Mercedes-Benz.

W1 provided Nico's cell number. This phone number was found to be associated with Mr. Barnhill in multiple public databases, including a police report from August 16, 2024. The police report was a death report regarding Mr. Barnhill's mother, at the address 1114 Oates Street,

---

[3] Law enforcement has thus far not found any evidence in Mr. Barnhill's phone location data that he traveled to these locations; however, law enforcement found messages in his iCloud to females located in these areas attempting to recruit them to work for him.

Northeast, Washington, D.C. (Note: this address is in the Trinidad neighborhood). Mr. Barnhill had provided this phone number to law enforcement.

T-Mobile also provided subscriber information for this number, which listed "Linwood Barnhill" as the subscriber on the account since October 6, 2021.

Google Maps queries for Mr. Barnhill's residence, 1XXX Oates Street, Northeast, Washington, D.C., revealed a street view image captured in August 2022. The image showed a white Infiniti SUV parked in front of the residence. D.C. Department of Motor Vehicles registration queries revealed that Mr. Barnhill is the registered owner of the following vehicle: White 2011 Infiniti QX65 (SUV), bearing D.C. tag GM5060. This is consistent with the description of Nico's vehicle provided by both MV1 and W1.

NCIC queries for Mr. Barnhill revealed that he was arrested in Washington, D.C. on December 11, 2013, and later pled guilty on June 20, 2014, in D.C. District Count case 14-CR-00124 (TSC) to two counts of Pandering of a Minor and one count of Possession of Child Pornography. FBI database queries revealed Mr. Barnhill was the subject of closed FBI investigation 31E-WF-3800065, which resulted in the referenced charges. Mr. Barnhill is a registered sex offender currently on supervised release status, with his contact information listed as the same phone number as that provided by W1. On March 20, 2025, Mr. Barnhill probation officer advised that she contacts Mr. Barnhill using this phone number. The probation officer also confirmed Mr. Barnhill's Oates Street address.

On March 31, 2025, law enforcement conducted an interview with a 16-year-old girl ("MV2"). MV2 said she met Nico about a year ago when she was 15 years old. MV2 stated she met Nico through another 15-year-old-girl who was working for him. At the time, MV2 was a runaway and needed money. The other girl told MV2 that she could make money selling weed

for Nico. However, after talking to Nico on the phone, MV2 learned that Nico was a pimp and that he wanted her to dance at a club in Maryland. Nico told MV2 that he had the girls who work for him say that he sells weed so that he would not get "caught up" by law enforcement. MV2 told Nico that she was 15 years old and Nico directed her to tell the employees at the club that she was eighteen years old. Nico informed MV2 that she could make more money if she worked the VIP rooms at the club and had sex with men. Nico told MV2 not to do anything "unprotected" and that he would provide her with condoms.

MV2 told Nico that she would "think about" his offer, but ultimately decided that she did not want to do it. However, a few weeks later, she needed a ride and called Nico. Nico came and picked her up in a white Infinity truck. MV2 believed she was at a Metro train station in Maryland. In the vehicle, Nico again discussed how he wanted MV2 to work for him at the club. Nico began "touching on" MV2, including grabbing her breasts underneath her shirt and touching her thigh. MV2 was uncomfortable and tried to move her body away from him, but he continued touching her. Nico told MV2 that she did not have a body like a fifteen-year-old. Nico also told MV2 that men would love her in the club, and he kept trying to convince her to go. MV2 told Nico to stop touching her, and he became offended and mad. Nico then dropped MV2 off at her friend's house in Washington, D.C.

MV2 stated that on one occasion, her friend, who was also a minor, Facetimed her from Nico's house. MV2 saw that her friend was dancing on a stripper pole and that Nico was giving her liquor.

MV2 stated that Nico had told her that he did not discuss anything about the club over text because "they get you" through text messages. Instead, Nico would tell MV2 to call him.

MV2 was shown a single confirmation photograph of Mr. Barnhill and identified the man in the photograph as Nico.

On March 25, 2025, the United States District Court for the District of Columbia issued a search warrant for prospective and historical cell data for Mr. Barnhill's phone number for the time period from April 6, 2023, to present. Law enforcement reviewed the historical cell data for this phone number and found the following:

- on numerous different dates within the time period, the phone number had cell location data in the area of the Ebony Inn.
- over 2000 phone calls and text messages with different phone numbers that law enforcement identified as being associated, through prior investigations or police reports, with minor females.
- text messages or phone calls with approximately 100 different phone numbers that were posted in online sexual solicitation advertisements, including in North Carolina, Baltimore, and Florida.

On March 28, 2025, the United States District Court for the District of Columbia issued a search warrant for Mr. Barnhill's Apple iCloud account. Law enforcement reviewed the provided records and found numerous text messages with phone numbers associated with minor females. Mr. Barnhill would frequently advise these minor females to call him and not to discuss "business" via text message. However, law enforcement located messages that discussed going to "the club," dancing for money, and the VIP room. Moreover, multiple minor females provided addresses of their current location as local high schools in the District of Colombia.

Law enforcement also located messages between Mr. Barnhill and W1. The date range of these messages is from September 17, 2024, to November 26, 2024. Both Mr. Barnhill and W1

sent pictures to each other that cannot be viewed in the iCloud account. Mr. Barnhill frequently requested that W1 call him instead of sending text messages. At one point, W1 asked, "Niko Yk[4] Any Clubs I Can Dance At Tonight Me & My Sister," and Mr. Barnhll replied, "Hit me later." Later in the messages, Mr. Barnhill referenced W1 finding him another girl by asking, "Get me some 1 I got u." W1 replied that she has someone and provided a name (W1 has since positively identified this girl, who was 14 years old at the time). It appears from the messages that Mr. Barnhill then had a phone call with this girl using W1's phone. W1 also appears to have sent a picture of this girl to Mr. Barnhill, but the picture cannot be viewed in the iCloud account.

Your affiant also located messages between Mr. Barnhill and an unidentified minor between February 26, 2025, and March 19, 2025. The unidentified minor told Mr. Barnhill that she will be eighteen years old in two weeks but that she wants to make money before her birthday:

> Minor: is it a way I can make some today? I can see if I can arrange anything
>
> BARNHILL: ima need sexier pics to make money today?
>
> Minor: idk i just wanna be able to order some stuff for my birthday so whatever i have to do to start making money today ill do it

The unidentified minor then appears to send numerous pictures of herself to Mr. Barnhill, but they cannot be viewed in the iCloud account. Mr. Barnhill mentions that there are "private events," as well as dancing, where she can earn money. Further in the messages, the unidentified minor tells Mr. Barnhill that he can pick her up after school to discuss more:

> BARNHILL: Can I send you a Uber
>
> Minor: Yea you can but I can't stay for long

---

[4] Yk is shorthand for 'you know.'

       BARNHILL:       How long can you still

       Minor:             I can stay long enough for me and you to talk. This business

The minor provides Mr. Barnhill with the name of her high school (located in the District of Columbia) and Mr. Barnhill sends an Uber to pick her up. Shortly thereafter, the minor texts that she is the car and says, "Idk[5] what house it is." Mr. Barnhill replied, "1XXX,"[6] which appears to reference his address.

**B.**    **Search Warrants**

On May 1, 2025, and May 2, 2025, law enforcement executed search warrants on Mr. Barnhill's residence, storage unit, and white Infiniti SUV, as well as a hotel room at the Ivy City Hotel in Washington, D.C., where he had been staying when he was arrested.[7] Law enforcement recovered three cell phones from Mr. Barnhill's hotel room, two of which were stored in a Faraday bag, a device which blocks electromagnetic signals and prevents the phone from communicating with cell phone towers and being tracked by law enforcement. In Mr. Barnhill's vehicle, law enforcement recovered a bag of condoms. In his storage locker, law enforcement discovered numerous pieces of female lingerie and shoes suggestive of erotic dancing, books on the topic of pimping, and four replica firearms. The guns were not operable, but were designed to look real, as shown below:

---

[5] 'Idk' is shorthand for 'I don't know.'

[6] The text message contained the street number associated with Mr. Barnhill's home address.

[7] Mr. Barnhill had previously put his residence up for sale; law enforcement observed him moving his belongings to the storage locker on April 30, 2025.



Law enforcement also observed a stripper pole in the basement of Mr. Barnhill's residence, as described by MV1.

## ARGUMENT

The Bail Reform Act permits a judicial officer to hold an individual without bond pending trial if the officer finds clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Pursuant to 18 U.S.C. § 3142(f)(1)(A), the judicial officer shall hold a hearing on the question of detention upon the motion of the government in a case that involves a crime of violence. Pursuant to 18 U.S.C. § 3142(f)(1)(B), the judicial officer shall hold a hearing on the question of detention upon the motion of the government in a case that involves an offense with maximum sentence of death or life imprisonment.

Four of the charged crimes – Sex Trafficking by Force, Fraud, or Coercion; Sex Trafficking of Children; Coercion and Enticement; and Transportation with Intent to Engage in Criminal Sexual Activity – are crimes of violence involving a minor victim. Under 18 U.S.C. §

3142(e)(3)(E), these offenses carry a rebuttable presumption that the defendant constitutes a danger to the community, and that no pretrial release condition or combination of conditions may be imposed to assure the safety of any other person and the community. Moreover, a second rebuttable presumption in favor of detention arises under 18 U.S.C. § 3142(e)(3)(D), which applies when a defendant is charged with a Chapter 77 for which a maximum term of imprisonment of twenty years or more is prescribed.[8] These presumptions "operate at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (observing that the presumptions in § 3142(e) "are rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released").

In determining whether the defendant has overcome that presumption, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g). Even when the defendant has offered evidence to rebut the presumption of dangerousness, the presumption remains a factor in the court's analysis of the section 3142(g) factors. *See United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1983) ("Use of that word [rebutted] in this context is somewhat misleading because the rebutted presumption is not erased. Instead it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."). As the Sixth Circuit has observed, "[t]he presumption [of dangerousness] remains as

---

[8] Both Sex Trafficking by Force, Fraud, or Coercion and Sex Trafficking of Children are Chapter 77 offenses with a maximum term of imprisonment of twenty years.

a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010) ("To rebut the presumption, therefore, a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm.'").

## ANALYSIS

For the reasons that follow, the government submits that Mr. Barnhill cannot rebut the multiple presumptions in favor of detention, and that there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community should he be released. Accordingly, Mr. Barnhill should remain detained pending trial.

### A.     The Nature and Circumstances of the Offense Charged

Mr. Barnhill has been charged with sex trafficking teenage girls, including through the use of physical force and coercion, and transporting them across state lines to engage in prostitution. Four of his charges carry mandatory minimum sentences of ten or fifteen years, reflecting the severity of his offenses. Moreover, the particular circumstances of Mr. Barnhill's offenses are egregious. He ran a trafficking operation that purposefully exploited vulnerable teenage girls in commercial sex. He profited off the bodies of these young girls, exposing them to serious physical and psychological harms to satisfy his own greed. He beat and raped a 15-year-old girl to compel her obedience, even directing her to get his moniker tattooed on her body to show his ownership of her. His criminal conduct was violent, purposeful, and extensive, and targeted some of the most vulnerable individuals. Thus, the nature and circumstances of the offenses weigh in favor of detention.

**B.      The Weight of the Evidence Against the Defendant**

The evidence against Mr. Barnhill is strong. Law enforcement has interviewed multiple victims, all of whom identified the individual who recruited or tried to recruit them as Mr. Barnhill. Their statements are corroborated by his cell phone data, showing numerous trips to the Ebony Inn and thousands of phone calls and text messages with minor females, as well as his iCloud data, which contains text messages with these minors discussing going to "the club," dancing for money, and the VIP room – as well as a message showing that he sent an Uber to pick up one minor at her high school. The accounts of the victims are further corroborated by the evidence recovered by law enforcement, including multiple replica firearms, female lingerie and shoes reflective of erotic dancing, and condoms, as well as the stripper pole observed in Mr. Barnhill's basement. In addition, Mr. Barnhill's abuse of MV1 is corroborated by the tattoo of his name on her body, which she showed to law enforcement. Thus, the strength of the evidence weighs in favor of detention.

**C.      The History and Characteristics of the Defendant**

At the time Mr. Barnhill committed the present offenses, he was on supervised release for committing remarkably similar crimes. In 2013, Mr. Barnhill – then a sworn police officer with the Metropolitan Police Department – approached teenage girls on three separate occasions, claiming that he could help them with a modeling career and luring them to his apartment, where he took nude photographs of them and attempted to sell two of them in commercial sex. The victims were fifteen, sixteen, and seventeen years old. Mr. Barnhill was convicted in D.C. District Court of two counts of Pandering of a Minor and one count of Possession of Child Pornography. He was sentenced to 84 months of incarceration, followed by ten years of supervised release, and ordered to register as a sex offender. He was released from incarceration

in 2020 and, far from rehabilitating his behavior, he returned to the same criminal activities and escalated his conduct – despite being on supervised release. Accordingly, this factor weighs in favor of detention.

### D. The Nature and Seriousness of the Danger to Any Person or the Community

Finally, the evidence here establishes that Mr. Barnhill presents a serious danger to the community – particularly to vulnerable minors. His offense conduct continued to the time of his arrest and includes the use of physical and sexual violence against children. Nor is home confinement sufficient to mitigate the danger that he presents. Mr. Barnhill has shown that he will not abide by court orders and that he is not deterred by the threat of legal consequences. Moreover, he is proficient in ways to evade law enforcement detection, demonstrated by his use of a Faraday bag for his cell phones and his direction to minors not to discuss commercial sex activities over text message. As a result, this factor also weighs heavily in favor of detention.

### CONCLUSION

For all of the reasons set forth above, and any other reasons set forth at a hearing on this issue, a consideration of the evidence in this case and the applicable statutory factors compels the conclusion that Mr. Barnhill cannot rebut the statutory presumption in favor of detention, and should be detained pending trial.

WHEREFORE, the government respectfully requests that the Court grant its motion for detention.

                Respectfully submitted,

                EDWARD R. MARTIN, JR.
                UNITED STATES ATTORNEY

By:    */s/ Caroline Burrell*
        Caroline Burrell
        CA Bar No. 283687
        Assistant United States Attorney
        United States Attorney's Office
        601 D St., N.W.
        Washington, DC 20530
        Phone: (202) 815-8613